IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY, | ) ) ) | CASE NO: 1:10-cv-1462 |
| | ) ) | MAGISTRATE JUDGE NANCY A. VECCHIARELLI |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| VORNADO LIQUIDATING TRUST SYSTEMS, INC. *et al.*, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | Doc. No. 20 |

This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Plaintiff, Motorists Mutual Insurance Company ("Motorists Mutual") filed a Motion for Summary Judgment against Defendant, Vornado Liquidating Trust ("Vornado Trust" or "the Trust").[1] (Doc. No. 20.) The Trust opposes Plaintiff's Motion. (Doc. No. 22.) Motorists Mutual has replied. (Doc. No. 23.) For the following reasons, Motorists Mutual's Motion for Summary Judgment is GRANTED.

---

[1] The Trust indicates that Motorists Mutual's Complaint and Motion for Summary Judgment incorrectly refer to the Trust as "Vornado Liquidating Trust Systems, Inc." The Trust explains that its correct name is "Vornado Liquidating Trust," that the word "Systems" is not included in its name, and that it is not incorporated.

## I. BACKGROUND

### A. Procedural Background

On July 22, 2010, Motorists Mutual filed its Complaint against Vornado Trust and Vornado Air, LLC, ("Vornado Air") for breach of contract and fraudulent conveyance because Vornado Trust allegedly has failed to pay Motorists Mutual in accordance with the terms of a Confidential Settlement Agreement and Mutual Release ("Settlement Agreement"), and a Promissory Note ("Note"), executed by Motorists Mutual and the Trust. (Doc. No. 1.) The Settlement Agreement and Note were executed in relation to prior litigation[2] wherein Motorists Mutual, as subrogees of its insured, sought payment from Vornado Trust's predecessor in interest, Vornado Air Circulation Systems, Inc. ("Vornado Circulation"),[3] for fire damage allegedly caused by a space heater sold by Vornado Circulation. Vornado Trust admits that it has not yet paid the Note.

On October 28, 2010, Motorists Mutual filed its Motion for Summary Judgment against Vornado Trust arguing that it is entitled to Judgment and $100,000 in damages against the Trust as a matter of law because the Trust defaulted on the Note and breached the Settlement Agreement. (Doc. No. 20.) Motorists Mutual attached the Settlement Agreement and Note to its Motion as evidence in support of summary judgment. (Doc. No. 20, Attach. 2, 3.)

---

[2] *Motorists Mutual Insurance Company v. Vornado Air Circulation Sys., Inc.*, Case No. 1:07-cv-3256 (N.D. Ohio) (Gaughan, J.).

[3] Vornado Circulation ceased operations in 2006. Certain of its assets were sold to Vornado Air. Vornado Trust was established as a successor in interest to Vornado Circulation to liquidate and distribute the rest of Vornado Circulation's assets.

On November 30, 2010, Vornado Trust filed its Brief in Opposition to Motorists Mutual's Motion for Summary Judgment arguing that it did not default on the Note and breach the Settlement Agreement because payment of the Note was conditioned upon the Trust obtaining sufficient funds from products liability lawsuits that the Trust pursued, and that remain pending, against four suppliers of defective components of space heaters such as the one that allegedly caused the fire damage underlying this cause of action. The Trust attached the affidavit of Kay Reed, who avers that she a Trustee of Vornado Trust, as evidence that the parties intended the Trust's payment obligation to be conditional. (Doc. No. 22, Attach. 1.)

On December 13, 2010, Motorists Mutual filed its Reply to the Trust's Brief in Opposition arguing that the Trust's affidavit from Ms. Reed is inadmissible and, therefore, that the Trust failed to meet its burden for overcoming summary judgment because it failed to set forth sufficient facts to show there is a genuine issue of material fact.

### B. The Settlement Agreement and Note

The parties do not dispute the existence of the Settlement Agreement and Note, and the Trust does not dispute their express, written terms. The Settlement Agreement is dated March 29, 2009.[4] (Settlement Agreement Introduction ¶ 1, Mot. Summ. J., Ex. A.) The Settlement Agreement provides that "Vornado [Trust] shall contribute $100,000.00 to the settlement total pursuant to an executed promissory note attached

---

[4] A representative of Motorists Mutual signed the Settlement Agreement on March 17, 2009, and a representative of Vornado Trust signed the Settlement Agreement on March 18, 2009. (Mot. Summ. J., Ex. A.)

-3-

hereto as Exhibit A and incorporated herein by this reference." (Settlement Agreement § 1a.) The Settlement Agreement further provides that it, incorporating the Note by reference, expresses the entirety of the Agreement between Motorists Mutual and Vornado Trust:

> The parties understand and acknowledge that this Agreement contains the entirety of the Agreement between them and that there [are] no other oral or written, express or implied promises, agreements, representations, or inducements not specified in this Agreement. The parties agree that all of the terms in this Agreement are contractual and not mere recitals. This agreement supercedes any and all prior or contemporaneous agreements or understandings between the parties.

(Settlement Agreement § 5.)

The Note is dated March 1, 2009.[5] (Note Introduction ¶ 1, Mot. Summ. J., Ex. B.) The Note states Vornado Trust's payment obligation as follows:

> FOR VALUE RECEIVED, Vornado Liquidating Trust, successor in interest to Vornado Air Circulation Systems, Inc. . . . promises to pay to the order of Cozen O'Connor, as attorneys for Motorists Mutual Insurance Company ("Payee"), or Payee's assigns, the principal sum of One Hundred Thousand Dollars ($100,000.00), payable on or before December 10, 2009.

(Note Introduction ¶ 1.) The Note provides the procedure for making payment as follows:

> Payment shall be in the form of a cashier's check and made payable to "Cozen O'Connor as attorneys for Motorists Mutual Insurance Company" . . . and delivered directly to: Jim H. Fields, Jr., Cozen O'Connor, 1900 Market Street, Philadelphia, PA, 19103, who is authorized to receive payments on Payee's behalf. Payments must be received by close of business December 10, 2009. Maker shall have the right at any time, and from time to time, to pre-pay any portion of the principal sum due under this Note at that time, in whole or in part, without notice and without pre-payment penalty or premium.

---

[5] A representative of Vornado Trust signed the Promissory Note on March 19, 2009. (Mot. Summ. J., Ex. B.)

-4-

(Note § 1.) The Note provides the purpose and effect of payment, as well:

> This Promissory Note . . . is issued in satisfaction of Maker's debt to Payee as required under the Confidential Settlement Agreement and Mutual Release . . . reached in the case venued in the United States District Court for the Northern District of Ohio, Eastern Division, styled *Motorists Mutual Insurance Company, as subrogees of Christopher and Kristine Adams v. Vornado Air Circulation Systems, Inc.*, Case Number 1:07-CV-3256.

(Note Introduction ¶ 2.) The Note further provides when default would occur:

> The occurrence of any one or more of the following events shall, without notice, at Payee's option and sole discretion, constitute an Event of Default . . . hereunder:
>
> a. The failure of Maker to make payment when due;
>
> b. The failure of Maker to observe or perform any material term, condition, agreement, covenant or provision contained herein, or in the Settlement Agreement; . . .

(Note § 3.) And, the Note provides that it "shall not be modified or amended other than by agreement in writing signed by Maker and Payee." (Note § 7a.)

Both the Settlement Agreement and the Note provide that they shall be governed by the laws of the State of Ohio. (Settlement Agreement ¶ 6; Note § 7b.)

Regarding the parties' intentions, the Settlement Agreement (incorporating the Note) indicates that "Vornado [Trust] and Motorists Mutual desire to resolve this dispute without the expense of additional litigation," and "enter this Agreement in full settlement and discharge of all . . . claims against Vornado [Trust] . . . arising from or related to the claims raised in the Litigation." (Settlement Agreement Introduction ¶ 5.)

## II.  LAW & ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. See Cox v. Ky. Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

In reviewing summary judgment motions, a court must view all facts and inferences drawn therefrom in a light most favorable to the nonmoving party. Pachla v. Saunders Sys., Inc., 899 F.2d 496, 498 (6th Cir. 1990). However, the Court does not weigh the evidence or make credibility determinations. Joostberns v. United Parcel Services, Inc., 166 F. App'x 783, 787 (6th Cir. 2006). Moreover, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 *1986). In other words,

the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251.

### B. Vornado Trust's Obligation to Pay Motorists Mutual Pursuant to the Settlement Agreement and Promissory Note

Motorists Mutual argues that the Settlement Agreement and Note unequivocally required Vornado Trust to pay Motorists Mutual on or before December 10, 2009, without condition, and that the Trust's failure to do so constituted a default on the Note and a breach of the Settlement Agreement.

The Trust responds that it did not default on the Note and breach the Settlement Agreement because its obligation to pay Motorists Mutual was conditioned upon the Trust obtaining sufficient funds from the other litigation in which it is still engaged, and that condition had not (and has not yet) been met. The Trust does not point to any evidence in the Settlement Agreement or Note indicating a condition precedent to payment. Instead, the Trust offers the affidavit of Kay Reed, who avers that she is a trustee of Vornado Trust; that she was a trustee when the parties were engaged in settlement negotiations; that she was a trustee when the parties entered into the Settlement Agreement and the Trust executed the Note; and that she has personal knowledge of the matters set forth in the affidavit. (Reed Aff. ¶¶ 1-4, Br. Opp'n, Ex. A.) Ms. Reed further avers that, during negotiations of the Settlement Agreement and Note, the Trust "expressly communicated to Motorists Mutual that its ability to make payment was conditioned upon successful resolution of its products liability lawsuits, and then only after it had received sufficient funds." (Reed Aff. ¶ 10.) Ms. Reed concludes that

"Any and all obligations for Vornado Trust to pay Motorists Mutual were conditioned upon Vornado Trust receiving sufficient funds in order to pay the Note." (Reed Aff. ¶ 11.)

Motorists Mutual replies that the Settlement Agreement and Note are together a single, fully integrated, and binding contract; therefore, the parol evidence rule bars the use of Ms. Reed's affidavit as evidence of the Trust's alleged condition precedent to payment because such a condition is not consistent with the material terms of the Settlement Agreement and Note. Motorists Mutual also notes that the affidavit is barred by Federal Rule of Civil Procedure 56(e)(1) because Ms. Reed does not have personal knowledge regarding the negotiation and execution of the Settlement Agreement and Note, and because her statements that the parties understood the Trust's payment obligation to be conditional is hearsay not within any exceptions.[6]

For the reasons set forth below, the Court finds that Vornado Trust's argument

---

[6] Federal Rule of Civil Procedure 56 was amended April 28, 2010, and the amended version became effective December 1, 2010. Motorists Mutual cites the former version of Rule 56 as it relates to affidavits, section (e)(1), which provided that "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1) (amended 2010). The amended Rule 56 sets forth the requirements for an affidavit to be admissible in support or opposition to a motion for summary judgment in section (c)(4) as follows: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out specific facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The April 28, 2010, amendments did not change the standards for granting summary judgment. Fed. R. Civ. P. 56 Advisory Committee Notes, 2010 Amendments ¶ 1.

that its payment obligation was conditional fails as a matter of law, that there is no genuine issue of material fact, and that Motorists Mutual is entitled to judgment as a matter of law.

In Ohio, settlement agreements are considered contracts and, therefore, their interpretation is governed by the law of contracts. *Chirchiglia v. Adm'r, Bureau of Workers' Comp.*, 138 Ohio App. 3d 676, 679, 742 N.E.2d 180, 182 (7th Dist. 2000). The overriding concern of any court when construing a contract is to ascertain and effectuate the intent of the parties. *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St. 3d 271, 276, 638 N.E.2d 572, 576 (1994). The intent of the parties to a contract is presumed to reside in the language the parties chose to employ in the agreement. *Kelly v. Medical Life Ins. Co.*, 31 Ohio St. 3d 130, 132, 509 N.E.2d 411, 413 (1987).

Generally, evidence cannot be introduced to show an agreement between the parties that is materially different from that expressed by clear and unambiguous language in the contract at issue. *TRINOVA*, 70 Ohio St. 3d at 276, 638 N.E.2d at 576. The parol evidence rule provides that, absent fraud, mistake, or other invalidating cause, the final written integration of an agreement between parties may not be varied, contradicted, or supplemented by evidence of prior or contemporaneous oral agreements, or by prior written agreements. *Galmish v. Cicchini*, 90 Ohio St. 3d 22, 27, 734 N.E.2d 782, 788 (2000). A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only when the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St. 3d 130, 132,

509 N.E.2d 411, 413 (1987).

If a contract is clear and unambiguous, its interpretation is a matter of law and there is no issue of fact to be determined. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. Of Ohio, Inc.*, 15 Ohio St. 3d 321, 322, 474 N.E.2d 271, 272 (1984) (per curiam). An ambiguity exists only when a term cannot be determined from the four corners of the agreement, or when the contract language is susceptible to two or more reasonable interpretations. *Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp.*, 16 F.3d 684, 686 (6th Cir. 1994). If no ambiguity exists, the terms of the contract must be applied without resorting to methods of construction and interpretation, *Chirchiglia*, 138 Ohio App. 3d at 679, 742 N.E.2d at 182, and extrinsic evidence may not be introduced to vary or modify the terms, *Kelly*, 31 Ohio St. 3d at 132, 509 N.E.2d at 413.

The Court finds that the terms of the Settlement Agreement and Note are clear and unambiguous. The Settlement Agreement and Note must be understood together because the Settlement Agreement incorporates the Note. The Settlement Agreement expressly provides that Vornado Trust shall contribute $100,000 to the settlement total pursuant to an executed promissory note. The Note was executed to satisfy the Settlement Agreement. The Note expressly provides that the Trust, as successor in interest to Vornado Circulation, promises to pay to the order of Motorists Mutual's counsel or counsel's assigns a principal sum of $100,000 by cashier's check on or before December 10, 2009, and that the Trust may make payments early without penalty. The Note expressly provides that default would occur if the Trust failed to pay when the Note was due, or if the Trust failed to observe or perform any material terms,

-10-

conditions, agreements, covenants, or provisions in the Note. The Note further expressly provides that the Note cannot be modified or amended except by agreement by the parties in a signed writing. Finally, the Settlement Agreement contains an integration clause that expressly provides that the Settlement Agreement (incorporating the Note) contains the entirety of the Agreement between the parties; that there are no other oral or written, express or implied promises, agreements, representations, or inducements not specified in the Settlement Agreement; and that the Settlement Agreement (incorporating the Note) supercedes any and all prior agreements or understandings between the parties. There is no language in either the Settlement Agreement or the Note that suggests payment was conditioned upon the Trust obtaining sufficient funds from the other litigation in which it was engaged, or that the Trust could make payment after December 10, 2009, if it obtained sufficient funds to do so. Indeed, Vornado Trust fails to point the Court's attention to any such language in the contract.

Because the terms of the Settlement Agreement and Note are clear and unambiguous, the Court may not engage in further contract construction and interpretation to further entertain the Trust's allegation that the parties intended the Trust's payment obligation to be conditional. See <u>Chirchiglia, 138 Ohio App. 3d at 679, 742 N.E.2d at 182</u>. Additionally, as the terms of the Settlement Agreement and Note are clear and unambiguous, Ms. Reed's affidavit may not be considered because it is evidence extrinsic to the Settlement Agreement and Note. See <u>Kelly, 31 Ohio St. 3d at 132, 509 N.E.2d at 413</u>.

The Trust argues, however, that the Note is not a final written integration of the

-11-

Trust's agreement with Motorists Mutual to pay pursuant to the Settlement Agreement, but is only partially integrated; therefore, the Trust contends that Ms. Reed's affidavit may be considered to show that the parties intended the Trust's payment obligation to be conditional. When a contract is partially integrated, it represents an agreement between the parties as to only a portion of a larger agreement. *TRINOVA*, 70 Ohio St. 3d at 276, 638 N.E.2d at 576. If a contract is only partially integrated, the parol evidence rule will not bar the introduction of extrinsic evidence of additional terms to the contract so long as the additional terms are consistent with the written terms of the partially integrated contract. *See id.*, 638 N.E.2d at 576. A partially integrated contract still may not be supplemented by extrinsic evidence of *contradictory* terms, however. See *Miller v. Lindsay-Green, Inc.*, No. 04AP-848, 2005 WL 3220215, at *9 (10th Dist. Dec. 1, 2005).

The question of whether a contract is partially integrated must be determined from the four corners of the document itself. *TRINOVA*, 70 Ohio St. 3d at 276, 638 N.E.2d at 576. In other words, extrinsic evidence of consistent additional terms is admissible to show the omitted portions of a contract if the contract is incomplete on its face, as where it is a mere memorandum omitting essential elements. *Miller*, 2005 WL 3220215, at *9.

Here, nothing within the four corners of the Settlement Agreement and Note suggests that the Note is only partially integrated. Indeed, the Note provides that payment was due on or before December 10, 2009, and that it was executed in satisfaction of the Settlement Agreement; the Settlement Agreement incorporates the

Note into the Settlement Agreement as a single contract; and the Settlement Agreement indicates that it is a full and final expression of the parties agreement. The Trust fails to point to any evidence within the four corners of the Settlement Agreement and Note suggesting that the Note is only partially integrated. Therefore, the Court finds that the Note, as it is incorporated into the Settlement Agreement, is fully integrated. Because the Settlement Agreement and Note constitute a fully integrated contract, the parol evidence rule prohibits them from being varied, contradicted, or supplemented by Ms. Reed's affidavit alleging that the Trust's payment obligation was conditional. See Galmish, 90 Ohio St. 3d at 27, 734 N.E.2d at 788.

Moreover, even if the Settlement Agreement and Note were partially integrated and not subject to the parol evidence rule, Ms. Reed's affidavit would still not be admissible because it provides for terms that contradict the written terms of the Settlement Agreement and Note. Ms. Reed avers that, during negotiations of the Settlement Agreement and Note, the Trust "expressly communicated to Motorists Mutual that its ability to make payment was conditioned upon successful resolution of its products liability lawsuits, and then only after it had received sufficient funds." (Reed Aff. ¶ 10.) Ms. Reed further avers that "Any and all obligations for Vornado Trust to pay Motorists Mutual were conditioned upon Vornado Trust receiving sufficient funds in order to pay the Note." (Reed Aff. ¶ 11.) If the Settlement Agreement and Note were read together with the alleged condition to payment, the contract would effectively provide that the Trust was required to pay Motorists Mutual on or before December 10, 2009, *only if* the Trust won its products liability lawsuits and obtained sufficient funds before that date. The Trust would not have to pay Motorists Mutual unless both

-13-

conditions (neither of which could be guaranteed) were met. This result would directly conflict with the express, clear, and unambiguous written terms of the Settlement Agreement and Note—that payment was due on or before December 10, 2009, in full satisfaction of the Settlement Agreement and in full settlement of the underlying litigation.

Because Ms. Reed's affidavit is barred from consideration by the law of contracts, it is not necessary to resolve the question of whether Ms. Reed has personal knowledge of the facts set forth in her affidavit pursuant to the requirements of Federal Rule of Civil Procedure 56.

Absent Ms. Reed's affidavit, the Trust has failed to provide specific facts supported by competent evidence showing there is a genuine issue of material fact for trial. Therefore, Motorists Mutual is entitled to Judgment as a matter of law. *See* Cox, 53 F.3d at 149.

### III. CONCLUSION

For the foregoing reasons, Motorists Mutual's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

                                                       s/ *Nancy A. Vecchiarelli*
                                                      Nancy A. Vecchiarelli
                                                      U.S. Magistrate Judge

Date: January 10, 2011